James F. KYSER, Individually and as
Father and Next Friend of James G. KYSER
*v.* John Patrick PORTER et al

76-334                               548 S.W. 2d 128

Opinion delivered March 28, 1977
(In Banc)

*Smith, Williams, Friday, Eldredge & Clark,* for appellant.

*Laser, Sharp, Haley, Young & Boswell, P.A.,* and *Gannaway, Darrow & Hanshaw,* for appellees.

ELSIJANE T. ROY, Justice. This action was brought by James F. Kyser individually and as father and next friend of James Greg Kyser for injuries the youth sustained in an automobile accident while a passenger in a Volkswagen van driven by Thomas J. Aston. The Aston vehicle, while proceeding up a hill, pulled out into the lane of oncoming traffic to go around a car parked next to the curb, resulting in a head-on collision with a Cutlass Oldsmovile drive by John Patrick Porter. The accident occurred in a residential area in western Little Rock as all the youths were on their way to school. Kyser, who was lying in the back of the van, sustained serious injuries when he was thrown toward the front of the vehicle on impact.

Appellant sued appellees, Thomas J. Aston and his parents, Jaral D. Aston and Mari Alyce Aston, as persons statutorily liable for the negligence or willful misconduct of their minor son pursuant to Ark. Stat. Ann. § 75-315 (Supp. 1975). Appellant also sued appellees John Patrick Porter and Union National Bank, Administrator of the Estate of J. O. Porter, John's deceased father, under the theory of negligent entrustment. At the time of the accident Porter was seventeen years of age while both Kyser and Aston were sixteen.

At the close of appellant's case, the trial court directed a verdict in favor of the Astons, finding the guest statute, Ark. Stat. Ann. § 75-913 (Repl. 1967), was applicable and that appellant had failed to prove willful and wanton misconduct on the part of Thomas Aston. At the conclusion of the case the jury returned a general verdict favorable to appellees Porter and Union National Bank, Administrator.

With regard to the action based on the liability of driver Aston in whose vehicle Kyser was a passenger, appellant contends that Aston's parents cannot avail themselves of the defenses inherent to the minor operator of the vehicle under the Arkansas guest statute because of the provisions of § 75-315 (Supp. 1975). This statute reads in pertinent part:

(a) The original application of any person under the age of eighteen (18) years for an instruction permit or operator's license shall be signed and verified . . . by both the father and mother of applicant, if both are living and have custody of him, or in the event neither parent is living then by the person or guardian having such custody . . . .

(b) Any negligence or wilful misconduct of a minor under the age of eighteen (18) years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or wilful misconduct.

(c) If any person who is required or authorized by Subsection (a) of this Section to sign the application or a minor in the manner therein provided, shall cause or knowingly cause or permit his child or ward or employee under the age of eighteen (18) years to drive a motor vehicle upon any highway, then any negligence or wilful misconduct or said minor shall be imputed to such person or persons and such person or persons shall be jointly and severally liable with such minor for any damages caused by such neligence or wilful misconduct. The provisions of this Subsection shall apply regardless of the fact that a drivers license may or may not have

been issued to said minor. For purposes of this act, a minor is hereby defined to be any person who has not attained the age of eighteen (18) years.

The Arkansas guest statute (§ 75-913) reads as follows:

No person transported as a guest in any automotive vehicle upon the public highways or in aircraft being flown in the air, or while upon the ground, shall have a cause of action against the owner or operator of such vehicle, or aircraft, for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft *unless such vehicle or aircraft was wilfully and wantonly operated in disregard of the rights of the others.* (Italics supplied.)

The Arkansas statute requires the guest to prove willful and wanton misconduct on the part of the operator before there is a cause of action against him, but appellant contends this is no bar to recovery against Mr. and Mrs. Aston because the defenses the minor might have under the guest statute are not available to them. Accordingly, appellant urges it was error to direct a verdict against him even if the evidence did not show willful and wanton misconduct on the part of Tommy Aston because all that is required to hold the parents liable is "any negligence or wilful misconduct." Appellant urges that *Garrison v. Williams,* 246 Ark. 1172, 442 S.W. 2d 231 (1969), supports his contention. We do not agree.

From a review of authorities presented we conclude the better construction of the statutes is that the defenses available to the minor are also available to the parent. The statutory purpose of § 75-315 (Supp. 1975) is to insure financial responsibility for the minor's use of the vehicle. We do not view the statute as imposing liability on the party signing the application for license where the law imposed none on the minor for whom the financial responsibility was assumed.

8 Am. Jur. 2d *Automobiles and Highway Traffic* § 473, p. 38, states:

The owner of a motor vehicle who would be otherwise liable to a guest injured through the negligence of a

third person, to whom he has granted permission to drive his vehicle, is entitled to the benefit of a guest statute, or comparable common-law rule. This is particularly the case where the protection of the guest statute is extended by its terms to the "owner or operator" of the motor vehicle. * * *

In *Rogers v. Watkins,* 258 Ark. 394, 525 S.W. 2d 665 (1975), plaintiffs alleged their damages were the result of the negligent driving of a motor vehicle by a minor daughter and her negligence was imputed to her father under Ark. Stat. Ann. § 75-315 (Repl. 1957). The Court held the daughter's defense inured to the parent's benefit, and it was thus improper to strike her father's late answer.

*Hately v. Hamilton,* 81 N.M. 774, 473 P. 2d 912 (1970), held that an act imposing liability on the parent signing the driver's license application of a minor did not deprive the parent of the defenses of the New Mexico guest statute. The court stated:

> Plaintiff argues that this statute imposes responsibility for a minor's negligence upon the person signing the application for license and the fact that the minor is absolved from liability under the Guest Act does not relieve the signers of financial responsibility for damages. With this contention we do not agree.

In *McHugh v. Brown,* 50 Del. 154, 125 A. 2d 583 (1956), plaintiff sought to charge the father of a minor defendant under a Delaware statute which provided that the person signing a minor's driver's license application was jointly liable for the minor's negligence. In rejecting plaintiff's contention that the parental responsibility statute modified the scope of the predecessor guest statute the court noted:

> The guest statute, . . . , is a statute of a special nature, dealing with one specific feature of the liability of an owner or operator of a car to a limited class of persons — guests riding in his car at the time of the accident. It is a general rule that in such a case the two statutes are read together and harmonized, and that in the event of

repugnancy the special statute prevails . . . . The Delaware statutes, read together, may be harmonized by construing the parental-responsibility statute as *placing liability on the parent in all cases in which the minor is liable to a third party, but eliminating the parents' liability in cases in which the minor is not liable to a guest.* (Italics supplied.)

Appellant relies in part on *Garrison* v. *Williams,* supra, a case in which Garrison had entrusted his automobile to his minor son, Gary, so that he and his friend, George Baugher III, could attend a movie. Both youths were fifteen years of age. At the movie Gary gave the keys to the automobile to Baugher who took his fourteen year old girl friend, Pamela Williams, for a ride. Baugher lost control of the automobile and crashed into a concrete wall, causing Pamela to sustain serious physical injuries. Pamela's father sued Gary's father for negligent entrustment of the automobile and Baugher for willful and wanton negligence.

In *Garrison* an instruction on assumption of risk was requested and given in Baugher's behalf, but no instruction on assumption of risk was requested by Gary's father. Thus, the Court was dealing with the defense of assumption of risk and not with the question of whether the Arkansas guest statute applies to cases of imputed liability under § 75-315. The last paragraph of the opinion states:

> The jury apparently found that the appellee assumed the risk of the willful and wanton neligent conduct of young Baugher and thereby waived her right of recovery against him. The jury did not find, nor were they requested to find, that the appellee assumed the risk of appellant's own wrongful act of negligent and unlawful entrustment and we are unable to say, that as a matter of law, she waived her right of recovery against him.

Furthermore, in *Garrison* we recognized liability under § 75-315 is "vicarious," and vicarious liability cannot exist unless there is primary liability.

The record reflects that as Aston proceeded around the parked automobile he was driving at a speed of approximate-

ly 25 to 30 miles an hour and that the automobile was parked next to the curb on the street. He testified he was still going up the hill and everything happened so fast that he "just saw a black flash" as the collision occurred. Conceding his conduct may indicate negligence in not pulling around the car more carefully, nevertheless even if we assume his conduct constituted gross negligence it does not show substantial evidence of willful and wanton conduct.

In *St. Louis Southwestern Railway Co.* v. *Clemons, etc.*, 242 Ark. 707, 415 S.W. 2d 332 (1967), we stated:

> Our court is committed to the majority rule that willful and wanton misconduct is, as a matter of law, higher in degree than gross negligence. *Froman v. J. R. Kelly Stave & Heading Co.*, 196 Ark. 808, 120 S.W. 2d 164 (1938). * * *

In *Steward, Administrator* v. *Thomas*, 222 Ark. 849, 262 S.W. 2d 901 (1953), this Court stated:

> * * * But assuming the facts would justify a finding of negligence, even gross negligence, still we do not believe there is any substantial evidence going to show that Jessie's conduct was wilful and wanton within the meaning of the statute. * * * *Splawn, Adm.* v. *Wright,* 198 Ark. 197, 128 S.W. 2d 248.

> * * *

In *Edwards* v. *Jeffers*, 204 Ark. 400, 162 S.W. 2d 472, there was testimony that the car was being driven 65 to 70 miles per hour on loose gravel over the protest of a guest. The court said that although the evidence was sufficient to show gross negligence, it was not sufficient to permit a recovery under the guest statute.

There being no substantial evidence of willful and wanton misconduct, we find the trial court correctly directed a verdict for Thomas Aston and his parents.

Appellant next contends as to the appeal involving Porter and the Administrator the court erred in giving Arkan-

sas Model Jury Instruction 910, which states that "a passenger in an automobile or other vehicle is required to use ordinary care for his own safety."

The testimony reflects at the time of this collision Kyser was reclining in the back of the Volkswagen on his own mattress, which was propped up by concrete blocks, leaning on one elbow, smoking a cigarette, with his head toward the front of the van and just behind the front seat, not paying any attention to anything, while the van in which he was riding was being driven up a hill. Although he was unable to see from his position in the van, we cannot say as a matter of law under the circumstances here Kyser was exercising "ordinary care" for his own safety. Accordingly, there was no error in the court's giving the instruction to the jury.

Appellant finally contends it was error for the trial court to grant appellee Porter's motion *in limine* which prohibited appellants from introducing any evidence on the issue of negligent entrustment. It was stipulated that the estate of J. O. Porter would be liable for any negligence on the part of John Porter under the provisions of § 75-315 (Supp. 1975). Appellant contends this ruling prevented him from presenting evidence of Porter's past driving record and traffic offenses which would have proved negligent entrustment by young Porter's father.

Our cases hold that a negligent entrustor, though guilty of a separate tort, is only liable to a third party for his entrustee's negligence, if any. See *Chaney* v. *Duncan,* 194 Ark. 1076, 110 S.W. 2d 21 (1937); *Ark. La. Lumber Co.* v. *Causey,* 228 Ark. 1130, 312 S.W. 2d 909 (1958); and *Sanders* v. *Walden,* 214 Ark. 523, 217 S.W. 2d 357 (1949). Thus, in the case at bar, had the appellant been allowed to present any available evidence on this theory of negligent entrustment to the jury, the end result could only have been established, at best, that the estate of Dr. Porter was liable, along with John Patrick Porter, for any damages chargeable to John. Since the estate of Dr. Porter had already stipulated to this effect the end result would have been the same.

John Patrick Porter testified that after he stopped to pick up Al Crossland he drove uphill to the point of impact and

during that time was entirely on his right side of the street and was driving about 25 miles per hour. He stated that the Volkswagen bus just popped up in front of him, and it happened so fast it seemed like it was only a car length away.

Porter stated that when he first saw the Volkswagen it was pretty close to the middle of his lane and the accident happened in a flash, and that he only had time for one instinctive reaction and that was to get his foot on the brake. He did get his foot on the brake and left skid marks up to the point of impact.

Porter stated that after the collision he had to get out on the right side of his car because his left door was jammed, and when he stepped out he stepped onto the Hedrick yard.

Al Crossland and Kevin Selakovich, passengers riding in the Porter vehicle, confirmed Porter's testimony.

Charles M. North, Jr., who has a Ph.D. in Engineering Mechanics, gave testimony based on the testimony of Don Eppinette, a witness for appellant who testified that he had made a model of part of the street to scale and that Porter could have seen the Volkswagen bus when he was about 90 feet from the point of impact. Based on this testimony and on the testimony that the Porter vehicle was traveling 25 miles per hour, Dr. North testified the Porter vehicle would have traveled this 90 feet in less than 2 1/2 seconds.

Appellees contend the court should have directed a verdict in their behalf since there was no substantial evidence of negligence on the part of John to go to the jury. Even though there may be merit in this contention, it is not necessary for us to consider it because of the jury verdict absolving Porter from any liability.

Finding no reversible error, the judgment is affirmed.